**JWB**

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Wayne Warden, Jr., | No. CV 11-1461-PHX-DGC (SPL) |
| Plaintiff, | **ORDER** |
| vs. | |
| Robert Harris, et al., | |
| Defendants. | |

Plaintiff John Warden brought this civil rights action under 42 U.S.C. § 1983 against three Arizona Department of Corrections (ADC) employees (Doc. 11). Defendants move for summary judgment (Doc. 82). Plaintiff also moves for a ruling as to his request for sanctions stemming from his assertion that Defendants falsified evidence in support of their summary judgment motion (Doc. 97). The Court will grant Defendants' motion, deny Plaintiff's motion for ruling on his request for sanctions, and terminate this action.

**I.    Background**

Plaintiff's claims arose during his confinement at the ADC's Yuma Complex-Cocopah Unit in San Luis, Arizona (Doc. 11 at 1). He named as Defendants Registered Nurses Nayelie Barrigan and Helen Spencer and Facility Health Provider Karen Barcklay (Doc. 11 at 2). In his three claims, Plaintiff alleged that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Plaintiff set forth the following facts in his amended pleading:

1    Plaintiff underwent cataract/lens replacement surgery on October 28, 2010.  Upon
2 return to the prison facility after surgery, Defendant Barrigan violated prison policy when she
3 did not take Plaintiff's vital signs or take possession of his post-surgery instructions from the
4 transportation security officer.  These instructions included prescriptions for eye drops and
5 ibuprofen, which were to be administered several times per day.  The next day, Plaintiff went
6 to a follow-up appointment and Defendant Barrigan again failed to obtain Plaintiff's vital
7 signs or collect his medical instructions upon his return.  An hour after arriving back from
8 his appointment on October 29, Plaintiff went to the health unit and requested his
9 prescriptions; Defendant Barrigan indicated that no post-surgery instructions were sent by
10 the doctor and to try back later.  Plaintiff did not receive his prescribed medication and, as
11 a result, suffered in pain.  On November 1 and 2, ADC staff attempted to procure Plaintiff's
12 prescriptions but Defendant Barringan made no effort to obtain them from the surgeon or
13 ADC's Facility Health Administrator.

14    Plaintiff also saw Defendant Spencer on the morning of November 2 and explained
15 to her that he was experiencing pain due to high pressure buildup inside his left eye.
16 Defendant Spencer observed Plaintiff's dry, red, and swollen left eye and indicated that these
17 types of complications are to be expected.  Plaintiff explained to Defendant Spencer that the
18 opthamologist prescribed eye drops and ibuprofen following surgery but he had not received
19 them.  Plaintiff asked Defendant Spencer to make efforts to obtain the necessary medication
20 but she refused.  Later that afternoon, Plaintiff's left eye ruptured.  Defendant Barcklay was
21 informed that Plaintiff's eye had ruptured, but she did not respond to Plaintiff until
22 November 5.  She examined Plaintiff's eye, was aware that Plaintiff was in pain and could
23 see blood inside the eye, and knew that ADC staff had failed to obtain Plaintiff's post-
24 surgery medications.  Defendant Barcklay indicated that an urgent appointment would be
25 requested and that Plaintiff would be seen during the week of November 8.  The
26 opthamologist indicated that Plaintiff's condition was not emergent and could be addressed
27 at the previously scheduled November 28 appointment.  Defendant Barcklay, however, never
28 checked on Plaintiff following the November 5 exam despite knowing that Plaintiff was in

pain. At the November 28 appointment, the opthamologist told Plaintiff that he was not informed about the rupture and no urgent appointment was requested.

Defendants move for summary judgment on the grounds that (1) Plaintiff's post-operative treatment was not, in itself, a serious medical need, (2) no Defendant acted with deliberate indifference towards any of Plaintiff's medical needs, and (3) any delay Plaintiff experienced in receiving his post-operative prescription medications did not cause any harm (Doc. 82).[1]

## II. Summary Judgment Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita

---

[1] The Court issued a Notice, required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of his obligation to respond to Defendants' motion and the requirements under Federal Rule of Civil Procedure 56 (Doc. 84).

1 Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation
2 omitted); see Fed. R. Civ. P. 56(c)(1).

3       At summary judgment, the judge's function is not to weigh the evidence and
4 determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477
5 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all
6 inferences in the nonmovant's favor. Id. at 255. The court need consider only the cited
7 materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

8 **III.   Defendants' Factual Contentions**

9       Defendants present the following relevant factual allegations: On October 28, 2010,
10 Dr. Warren Heller, M.D., performed a cataract surgical lens replacement on Plaintiff's left
11 eye (id. ¶ 20). During the surgery, the intraocular lens was placed and the position and
12 appearance were good (id. ¶ 21). Nylon sutures were placed to completely close the wound
13 (id. ¶ 22); the wound was water-tested and determined to be watertight (id. ¶ 23). Dr. Heller
14 closed, patched, and applied a shield to the left eye (id. ¶ 24). Post-operative instructions
15 advised Plaintiff to attend a follow-up appointment the next day and to take an over-the-
16 counter pain reliever for any discomfort (id. ¶ 26). Dr. Heller did not write any prescriptions
17 for Plaintiff the day of the surgery (id. ¶ 27). Plaintiff returned to the prison after surgery (id.
18 ¶ 28).

19       Plaintiff attended his post-surgical appointment with Dr. Heller the following day (id.
20 ¶ 29). Dr. Heller examined Plaintiff's left eye and noted it was normal (id. ¶ 30). Dr. Heller
21 wrote a treatment plan for Plaintiff, prescribed tobramycin (an antibiotic) and Pred Forte
22 (anti-inflammatory) drops to be administered to Plaintiff's left eye three times per day (id.
23 ¶¶ 31-32). Dr. Heller instructed Plaintiff to wear a patch and shield over his left eye during
24 sleep for two weeks and scheduled Plaintiff for a three-week follow-up appointment (id.
25 ¶ 33). Plaintiff returned to the prison following his appointment (id. ¶ 34).

1    Also on October 29, ADC's then-Clinical Coordinator, Carrie Feehan, contacted Dr.
2 Heller's office and Dr. Heller's office faxed a copy of Plaintiff's post-operative prescriptions,
3 which were then forwarded to medical staff at Cocopah (id. ¶¶ 35-36).  The pharmacy did
4 not locate any prescriptions for Plaintiff and none were filled that day (id. ¶ 37).

5    Plaintiff saw Nurse Maricruz Castillon in the evening on November 1 (id. ¶ 38).
6 Plaintiff's medical record reflects that he requested his medication and that his left eye was
7 red and itchy (id. ¶ 39).  Castillon examined Plaintiff's eye and noted it was red, not swollen,
8 and PERRLA (pupils equal, round, react to light and accommodation) (id.); she referred
9 Plaintiff to the medical provider for review and gave him ibuprofen (id.).  The next day,
10 Plaintiff advised Correctional Officer III Sundwall that he had not received his eye drops and
11 ibuprofen following surgery, which he said should have been started immediately (id. ¶ 42).
12 Sundwall observed that Plaintiff's left eye was extremely red, watery, and caused Plaintiff
13 pain (id. ¶ 43).  Sundwall drafted an incident report and noted that Plaintiff would see the
14 doctor on November 3 (id. ¶ 44).  Later that day, Plaintiff advised Sundwall that a fly landed
15 on his eye and when Plaintiff blinked "very hard" he felt pain and could not see out of his
16 eye  (id. ¶ 45).  Nurse Castillon examined Plaintiff and called the physician on call, who
17 ordered artificial tears ointment and increased Plaintiff's ibuprofen dosage (id. ¶ 51).

18    Plaintiff saw Barragan on November 3 for complaints of accumulating fluid in the iris
19 of his left eye and blurred vision (id. ¶ 53).  Barragan contacted Barcklay and advised her
20 that a fly landed on Plaintiff's eye, causing him to blink very hard (id. ¶¶ 54-56).  Based on
21 Plaintiff's complaints, his recent eye surgery, and her professional experience with post-
22 surgical eye patients, Barcklay prescribed Pred Forte and gentamyacin drops (id. ¶ 58).
23 Barcklay did not receive Dr. Heller's post-surgery orders (id. ¶ 59).  Plaintiff's prescriptions
24 were filled the same day (id. ¶ 60).

25    Plaintiff saw Barcklay in person on November 5 and reported that his left eye was
26 "not good" (id. ¶ 63).  Barcklay examined Plaintiff and noted that he appeared to be in no
27 acute distress and was alert and orientated (id. ¶ 64).  His left eye was slightly red, there was
28 fluid behind the left-eye lens, and a single drop of blood appeared after Plaintiff leaned

- 5 -

1 forward (id. ¶ 66). Barcklay contacted Dr. Heller's office and documented her conversation 2 in Plaintiff's medical record (id. ¶ 67). Dr. Heller indicated that Plaintiff's symptoms did not 3 require urgent follow-up and could be addressed at his previously scheduled appointment, 4 which was set for November 23 (id. ¶ 71).

5 During Plaintiff's post-surgical follow-up examinations, Dr. Heller observed that 6 Plaintiff's left eye was "normal," the wound was "well healed," and his vision was 20/20 7 with a lens (id. ¶¶ 80-81, 86-88, 90-91). Because a perfect reading of Plaintiff's left-eye 8 prescription was not obtainable prior to the surgery and because of the advance stage of the 9 cataract, Dr. Heller opined that Plaintiff's post-surgery vision is "very good" (id. ¶ 90).

## IV. Deliberate Indifference

### A. Governing Standard

To prevail on an Eighth Amendment medical care claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis. First, a prisoner must show a "serious medical need." Jett, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." McGuckin, 974 F.2d at 1059-60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is met if the prisoner demonstrates (1) a purposeful act or failure to respond to a prisoner's medical need and (2) harm caused by the indifference. Id. Prison officials are deliberately indifferent to a

prisoner's serious medical needs if they deny, delay, or intentionally interfere with medical treatment. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). But a delay in providing medical treatment does not constitute an Eighth Amendment violation unless the delay was harmful. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (citing Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)).

**B.    Analysis**

**1.    Objective Component - Serious Medical Need**

The Court finds that Plaintiff's post-surgery treatment constituted a serious medical need. Indications that a prisoner has a serious need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

While Plaintiff's symptoms—eye redness, watering, and pain—might not be sufficient on their own to constitute a serious medical need for Eighth Amendment purposes, the cataract surgery certainly rises to that level and the after-care is connected to that surgery. Consequently, the Court finds no basis to view Plaintiff's symptoms in isolation and conducts its analysis accordingly. The deliberate-indifference analysis thus turns on whether Defendants' response to Plaintiff's need was deliberately indifferent. Jett, 439 F.3d at 1096.

**2.    Subjective Component - Barrigan, Spencer, and Barcklay**

Plaintiff first focuses on Barrigan's failure to bring him to the prison's health unit upon his return (Doc. 91 at 2). But this failure does not amount to deliberate indifference for two reasons. First, violations of prison policy are insufficient standing alone to establish a constitutional violation. See Ybarra v. Bastian, 647 F.2d 891, 892 (9th Cir. 1981). Plaintiff must demonstrate more than the technical failure to follow the prison's guidelines; he must establish that this failure caused harm. And Plaintiff does not allege much less demonstrate that a failure to record his vital signs had any impact whatsoever on his eye.

The crux of Plaintiff's claim is the delay he experienced in receiving his post-surgery medication. The record reflects that Dr. Heller did not prescribe any medication until October 29[2] (Doc. 83, Ex. E, Heller Decl. ¶ 12) and Plaintiff received two prescriptions ordered by Barcklay on November 3 (Doc. 83-1 at 40, 44[3]). Even accepting as true Plaintiff's arguments that Barrigan and Spencer refused to investigate Plaintiff's requests for his post-operative medication between October 29 and November 3, to create a genuine issue of material fact for trial, Plaintiff must come forward with evidence that this delay caused harm. Shapley, 766 F.2d at 407. Plaintiff's claim fails because Dr. Heller declares—and Plaintiff does not dispute—that Plaintiff's eye healed normally and the delay in receiving the prescription medications did not cause any harm (Heller Decl. ¶¶ 19, 23, 25, 31).

Plaintiff attempts to establish harm in two ways. First, Plaintiff relies on the pain he experienced following surgery and cites caselaw articulating that pain can constitute harm for Eighth Amendment purposes. See, e.g., Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) ("pain, mental anguish, and suffering" suffered by an inmate due to a delay in surgery can constitute deliberate indifference). But the record in this case confirms that he was treated with increasing dosages of ibuprofen beginning on November 1, as recommended by Dr. Heller (Doc. 83-1 at 41; Heller Decl. ¶ 8). To show deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Plaintiff offers nothing to suggest that choosing to administer an over-the-counter pain medication consistent with the surgeon's recommendation was medically unacceptable.

---

[2] To the extent that Plaintiff alleged Defendants were deliberately indifferent in failing to obtain post-surgery instructions and prescriptions on October 28, that claim necessarily fails because the prescriptions did not yet exist.

[3] Citation refers to the page number in the Court's Case Management/Electronic Case Filing system.

- 8 -

1  Plaintiff also argues that he suffered harm because his post-surgery vision is 20/100
2  in his right eye and 20/140 in his left eye and he has been unable to correct his vision with
3  prescription eye wear (Doc. 91 at 5).  But Plaintiff offers no evidence that his vision is
4  uncorrectable with prescription eye wear and Dr. Heller documented that Plaintiff's vision
5  "does come up to 20/20 with a glass" (Doc. 83-1 at 82).

6  Relatedly, Plaintiff alleges that the November 2 "rupture" in his eye was caused by
7  a lack of medication (Doc. 91 at 5).  But Plaintiff introduces no evidence confirming that a
8  rupture occurred or what caused it.  This allegation is also contradicted by Dr. Heller's
9  declaration.  Dr. Heller opines that a burst blood vessel is a complication that can arise with
10 cataract surgery, was not caused by a lack of medication, resulted in no damage to the eye
11 itself, and, contrary to Plaintiff's suggestion, did not cause the implanted lens to shift (Heller
12 Decl. ¶¶ 29-34).  In contrast, Plaintiff's generalized evidence about ruptures in the eye and
13 post eye surgery protocol do not support his claim that he suffered a damaging eye rupture
14 due to a lack of medication.  See Hutchinson v. United States, 838 F.2d 390, 393 (9th Cir.
15 1988) (granting summary judgment against a plaintiff who relied only on her own allegations
16 and conclusory statements that defendants had been negligent and who failed to provide
17 affidavits or depositions of experts).

18 Plaintiff also places great emphasis on Barcklay's alleged failure to contact Dr. Heller
19 for an urgent appointment on November 5 (Doc. 91 at 12-13).  Plaintiff bases this point on
20 Dr. Heller's statement at the November 23 follow-up that nobody requested an urgent
21 appointment on Plaintiff's behalf.  But Plaintiff does not dispute that his medical records
22 document Barcklay's call to Dr. Heller (Doc. 83-1 at 40), during which Dr. Heller did not
23 believe an urgent appointment was necessary.  The fact that Dr. Heller did not independently
24 document the call in his separate medical record or recall it on November 23 does not create
25 an issue of fact for trial as to whether the call actually occurred.  Indeed, Dr. Heller states that
26 notations are not placed in an inmate's medical file if he does not believe an urgent
27 appointment is necessary (Heller Decl. ¶ 16).  Finally, and most importantly, even assuming
28 Barcklay did not call Dr. Heller's office on November 5, Plaintiff has not demonstrated any

- 9 -

1  harm resulting from waiting to see Dr. Heller until his November 23 appointment.

2  For all these reasons, there is no material factual dispute that Defendants were
3  deliberately indifferent, and their request for summary judgment will be granted.

### C. **Plaintiff's Motion for Sanctions**

Prior to filing his summary judgment response, Plaintiff filed a request for sanctions alleging that Defendants falsified evidence by altering Plaintiff's post-operative report to change the size of the lens implanted onto his eye (Doc. 85). Plaintiff maintains that during discovery, two versions of the report were disclosed to Plaintiff, one reflecting that a 13.5mm lens was used and the other reflecting that a 10.0mm lens was used (Doc. 85, Exs. A-B). Plaintiff strenuously argues that this constitutes a fraud on the court and seeks sanctions and summary denial of Defendants' summary judgment motion.

Plaintiff's requests must be denied. The Court has examined both documents and it appears at first glance that the second report reflects a different lens size. But in examining both documents at a high degree of magnification, the lens sizes are the same. It is obvious that the photocopy quality on the second document is poor, which understandably created confusion as to the text on the document.

Plaintiff also fails to introduce any evidence that Defendants intentionally falsified the document. Indeed, the document relates to Dr. Heller, who is a non-party. Also undercutting Plaintiff's argument is the fact that the size of the lens implanted onto his eye is irrelevant in considering the merits of Plaintiff's claims: that Defendants were deliberately indifferent to his post-surgery needs by failing to ensure he received his medication. In considering this narrow question, whether Plaintiff had a 10.0mm or 13.5mm lens is of no moment. For these reasons, Plaintiff's request for sanctions is denied. Plaintiff's motion for ruling will therefore be denied as moot.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. 82) and Plaintiff's Motion for Ruling (Doc. 97).

(2) Defendants' Motion for Summary Judgment (Doc. 82) is **granted**.

1   (3) Plaintiff's Motion for Ruling (Doc. 97) is **denied as moot**.

2   (4) The Clerk of Court must enter judgment accordingly and terminate the action.

3   Dated this 16th day of April, 2013.

David G. Campbell
United States District Judge

- 11 -